263 F.2d 944
 Ray CONNER, Administrator of the Estates of Esther Benedetto, Emily D'Ascenzo, Joseph D'Ascenzo, Jr., and Donna D'Ascenzo, Deceased, Appellant,
v.
PENNSYLVANIA RAILROAD COMPANY.
 No. 12676.
 United States Court of Appeals Third Circuit.
 Argued December 15, 1958.
 Decided February 12, 1959.
 
 Edward W. Furia, Philadelphia, Pa. (Furia & DiCintio, Philadelphia, Pa., on the brief), for appellant.
 Robert M. Landis, Philadelphia, Pa. (Matthew J. Broderick, Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for appellee, Pennsylvania R. R. Co.
 Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 The four decedents of plaintiff-appellant were passengers in an automobile which was struck by the first car of a three car train of defendant-appellee on Bishop Avenue, between the towns of Primos and Secane, Delaware County, Pennsylvania, January 31, 1956. Three of the passengers and the driver of their car were killed in the collision. The fourth passenger was fatally hurt and died within an hour.
 
 
 2
 All four cases were given to the jury under the general proposition that plaintiff was entitled to verdicts in his favor if he had established, as the court said in its charge, "* * * by the preponderance of the evidence that the defendant was guilty of negligence and that this negligence, if any, was the proximate cause of the accident, * * *."
 
 
 3
 Appellant argues that it was negligence under all of the circumstances for the defendant to operate its train at a speed up to fifty miles an hour over the crossing involved.
 
 
 4
 This question of the propriety of the train's speed is necessarily tied into what is, as urged by the appellant, the fundamental issue of whether the railroad furnished timely, adequate and affirmative warning of its train under the circumstances. The trial judge properly corelated the train's speed to the real problem of adequate warning when he said in his charge:
 
 
 5
 "Railroad trains, as we all know, sometimes travel at high speed. This high speed may be quite proper, but because of it and the great weight of a train it makes the crossing of railroad tracks by vehicles at grade crossings quite a dangerous thing. Because of the dangers involved in the use of grade crossings the law imposes upon railroads a duty at such public crossings to give adequate warning to users of the crossings of the approach of trains. This duty to give a warning varies with the circumstances at each crossing, because some crossings may be more dangerous than others. The law says in somewhat general terms that it is the duty of a railroad at grade crossings to give timely and sufficient warning of the approach of trains, taking into consideration the circumstances of each crossing, such as the physical characteristics of the crossing, the ability of the travelers to see an approaching train, the rate of speed of the train and the amount of vehicle traffic at the crossing."
 
 
 6
 Facing the real question of whether the warning of the train's approach was adequate, we find the evidence is that, as the decedents in their sedan were approaching the crossing to the north, the blinker lights at the crossing were operating. The car came to a stop beside the blinker light south of the crossing. At that time the adult passengers in the car were engaged in animated conversation with gestures which talk continued until the collision. The automobile moved forward a foot or two and stopped. This process was repeated several times until the car arrived almost at the eastbound track. From a stopped position there, it started up and proceeded across both tracks, attaining a moderate speed. As it straddled the westbound track the train struck it broadside, demolishing it. It was testified that the conventional whistle signal operating at the crossing began when the train was 895 feet from Bishop Avenue. The red lights were flashing on the south blinker standard as the sedan driver stopped beside it; those directly across the tracks from him on the northern blinker standard were flashing and within his plain view. The accident happened at 3:18 P.M. It was a clear day. There was a large sign attached to the south side blinker standard and directly below the flasher lights reading, "Stop on Red Signal."
 
 
 7
 There is evidence that the driver's view was obstructed to his right from which direction the train approached. One plaintiff's witness did not hear the train whistle until the car was on the first set of tracks. Also on behalf of plaintiff there was testimony that on occasion the blinker lights would operate for a number of minutes during which time no train crossed. This was caused by freight trains, shifting back and forth within the signal area, activating the lights. At one time a short circuit resulted in the blinkers functioning. Appellant urges that the lights were thus rendered meaningless and the crossing became in reality unprotected.
 
 
 8
 Appellant would at least be in an arguable position with reference to excessive operation of the blinker lights if there was evidence that the driver was familiar with the crossing permitting the inference that he had been lulled into ignoring the lights, etc. But as the district judge said in his opinion, "There is no evidence to show that the driver of the car or his passengers knew there was anything unusual, excessive or defective about the operation of the blinker lights." The balance of the above contentions on this point are at best conflicting evidential matters properly considered by the jury and disposed of by the verdicts.
 
 
 9
 Complaint is made by appellant of alleged misconduct on the part of one of the jurors. The particular juror had stated frankly on voir dire that he knew the Bishop Avenue crossing. He was not challenged by appellant. Nor was his knowledge of the crossing or opinion of it, if any, as to safety at all explored. Appellant accepted the juror and we must agree with the trial court that it was too late after the verdicts to protest the juror's expression to his fellow jurors of his views re the crossing.
 
 
 10
 This case took six days to try. The jury reached its verdict very quickly. Appellant suggests this indicates a capricious disregard of the evidence. We find no justification for that conclusion. The trial essentials were simple. As to the exhibits it is not challenged that the jury carefully examined many of the important ones during the trial itself.
 
 
 11
 The court's charge is attacked in several respects. Plaintiff requested that the following be charged:
 
 
 12
 "2. It is not incumbent upon a railroad to keep and maintain automatic electric danger signals, or blinker lights at a crossing, since other modes of warning might equally suffice, but having so established it and educated travelers to rely upon such a warning, it is the duty of the railroad, either to keep it in efficient operation, or to give notice that it is not in working order, but this duty is not absolute, reasonable care being required."
 
 
 13
 The above language tended to create an impression that the blinker lights were not working properly at the time of the accident. The evidence does not justify that inference and the request was properly denied.
 
 
 14
 The court refused plaintiff's point regarding the speed of the train as follows:
 
 
 15
 "4. It is the duty of the railroad not to permit its trains to travel at a speed, which maintained in connection with adequate warning devices, would endanger a pedestrian or automobile driver who is himself not negligent.
 
 
 16
 "Whether or not the train in this case travelled at an excessive rate of speed, in view of the warnings given of the approach of the train is for the Jury to determine. If under all the circumstances, considering the nature of the crossing, and the warning signals given by the railroad, the speed of the train was excessive, and the deceased plaintiffs were not negligent in this case, the Jury must return a verdict for the plaintiffs."
 
 
 17
 We do not think that the refusal of this request as presented was error. The district judge, as already above quoted, had accurately outlined the legal tying-in of the train's speed with adequate warning under the present facts. He had charged plaintiff's first point which included the speed of the train as one of the circumstances for the jury to consider in connection with the requirement of "suitable, timely and sufficient warning adapted to the circumstances" of the train's approach to the grade crossing. In addition, the trial court held in refusing a new trial "that there was no evidence of excessive speed on the part of the train." Our own examination of the record supports that conclusion. The fact that the speed was fifty miles an hour is undisputed. Of itself it was within the limit fixed by the railroad. There was no train speed fixed by law. And there is no evidence in this cause that the speed was excessive. What happened was that in the face of the clear warning of the blinker lights and the whistle, the car driver deliberately drove from a place of safety on to the westbound tracks despite poor visibility to his right and despite the fact that the danger was not coming from his left as he could then see. The train stopped according to the evidence within normal distance after the emergency brakes were applied. There is nothing in the testimony which gives the slightest indication that the train had defective brakes.
 
 
 18
 The denial of plaintiff's seventh point was sound. It needs no discussion. The refusal of the eighth and ninth points was not error. The judge affirmatively instructed the jury that there was no element of contributory negligence before them; that the only negligence query was whether the railroad was guilty of negligence which was the proximate cause of the accident. He told the jury as a governing principle that "They (the decedents) had no control over its (the car's) operation and none of them could have been guilty of negligence."
 
 
 19
 We are satisfied that under the facts the charging of the defense seventeenth point was not reversible error. We have heretofore covered the evidence concerning prior excessive operation of the blinker lights, the subject of defendant's allowed thirty-second point for charge.
 
 
 20
 Generally, appellant objects to the charge as wholly inadequate and unclear. This is not substantiated. The court presented the simple issue of defendant's negligence to the jury sharply and fairly. This terribly unfortunate accident had killed five people, among them a two year old child. The four decedents whom plaintiff represented were innocent of fault and the judge so instructed the jury. But the judge could not and did not distort the facts or law arising from them to excuse the glaring fault of the driver of the automobile; the issue was not whether an accident had happened. However, the judge did, in accordance with his duty, pass along the case as the trial had crystallized it to the jury for its judgment. That judgment did, we think, completely dispose of the suit.
 
 
 21
 There are several items dealing with admission of evidence argued in appellant's brief. We have examined these and do not find any of them raising a substantial question.
 
 
 22
 The judgment of the district court will be affirmed.